153 So. 679

## UNION INDEMNITY CO. v. RELIANCE HOMESTEAD ASS'N.

No. 31994.

Feb. 26, 1934.

J. C. Henriques, Rosen, Kammer, Wolff & Farrar, and Wm. W. Ogden, all of New Orleans, for appellant.

P. M. Milner and Azzo J. Plough, both of New Orleans, for appellee.

LAND, Justice.

On August 22, 1928, a building contract was entered into between Gaston Cabiro, owner, and Anthony Bissant, contractor, to build an

apartment house at 1532 Foucher street, in the city of New Orleans, for $73,000.

The plaintiff, the Union Indemnity Company, signed this contract as statutory surety under Act No. 298 of 1926, binding itself, in solido, with Anthony Bissant, contractor, under the act to complete the work and pay all subcontractors, material furnishers, etc.

The Reliance Homestead Association intervened in the contract and agreed to advance for the owner, Gaston Cabiro, to the contractor, Anthony Bissant, the sum of $73,000.

The contractor completed the building. The owner paid the contractor in full the contract price of $73,000. The building was accepted and acceptance recorded, and the building contract was canceled in the mortgage office May 10, 1929, by the owner, the contractor, and Reliance Homestead Association. No liens were recorded.

The contractor had been paid in full $73,-000, the contract price, but left unpaid bills in the sum of $12,505.72, which the Union Indemnity Company paid, because it was bound to pay them as statutory surety company.

In the present suit, the Union Indemnity Company does not bring suit for the amount of these bills against its defaulting principal, Anthony Bissant, who, it guaranteed, would pay his subcontractors and material furnishers, etc.

It does not sue the owner, but it sues the money lender, the Reliance Homestead Association, who loaned the $73,000 to Gaston Cabiro to pay for the building.

Defendant, the Reliance Homestead Association, filed an exception of no cause of action to the petition, on the ground that this is an attempt on the part of the plaintiff surety company—which had become the statutory surety of the contractor in favor of the owner and subcontractors, material furnishers, etc., long after completion and acceptance of the building, upon failure of the contractor to pay his obligations after being paid in full by the owner—to make the lender of the money the indemnitor or counter surety of the surety, in the absence of any obligation either in the statutory bond or the building contract, which would give rise to such a cause of action.

From a judgment sustaining the exception of no cause of action, and dismissing the suit, plaintiff has appealed.

The building contract is annexed to the petition, and therefore is a part of same.

In the tenth article of this contract it is stipulated that "the only obligation" of the Reliance Homestead Association, the lender of the money, "is the payment for account of the party of the first part (the owner) of the contract price in the manner and under the conditions hereinbefore provided."

Under the fifth article of the contract it is stipulated that the payments shall be made by the Reliance Homestead Association as follows:

"First Payment of eighty per cent of completed work upon estimate and certificate of expert.

"Second Payment of eighty per cent of all completed work upon estimate and certificate of expert, less prior payments.

"Third Payment of eighty per cent of all completed work upon estimate and certificate of expert, less prior payments.

"Fourth Payment of eighty per cent less prior payments, when building and all work is finished, delivered and accepted; said acceptance to be in writing and to be made by party of the first part (owner) with the approval of the party of the third part (Homestead Association).

"Fifth Payment of remaining balance of twenty per cent thirty days after the recordation of said acceptance in the mortgage office.

"Provided, That in each case of the said payments, a certificate shall be obtained from said expert, or any other Architect selected by said party of the third part (Homestead Association) to the effect that the work done is in accordance with the Drawings and Specifications, *and that the payments are properly due; which certificate shall be the authority of the party of the third part to make said payments; said certificate, however, in no way lessening the responsibility of said party of the second part* (contractor), neither shall it exempt said party of the second part (contractor) from liability to replace work, if it be afterwards discovered to have been improperly done or not according to the Drawings or Specifications, either in execution or materials; provided further, *that before the last payment* said party of the second part (contractor) shall deliver to said party of the third part (Homestead Association), at the former's expense, *a certificate from the Recorder of Mortgages*, in the names of the parties of the first (owner) and second parts (contractor) *showing that no liens or claims growing out of said work are recorded, which certificate shall be the authority of the party of the third part* (Home-

stead Association) *to make said last payment, and any payment made on such clear certificate shall exonerate the parts of the first* (owner) *and third parties* (Homestead Association) *from any further liability for said payment to the party of the second part* (contractor) *or his surety;* and provided further that said party of the third part (Homestead Association) shall have the right, at its option, to withhold any or all of the payments herein provided for, in the event there shall be any legal claims against said party of the second part (contractor) in any manner affecting said party of the first part (owner), or said works, at any time during the progress of the work herein contracted for, or upon its completion." (Italics ours.)

It is clear, under the above stipulations, that the Reliance Homestead Association was fully protected as to each payment made by it, before the last payment, by the certificate of the expert that the work was done in accordance with the drawings and specifications and that the payments were properly due. But *the contractor* was not released by the payments made by the Homestead Association, as it is specifically provided in the building contract: "Said certificate, however, *in no way lessening* the responsibility of the party of the second part (contractor)." As the contractor was bound, notwithstanding the payments, before the last, made by the Homestead Association upon the certificates of the expert, plaintiff, the surety company, was likewise bound.

It is also provided in the building contract that, *before the last payment*, a certificate showing that no liens or claims growing out of said work are recorded shall be furnished

by the contractor to the Homestead Association, and that any payment made on such clear certificate shall exonerate the owner and the Homestead Association "from *any further liability* for said payment" to the contractor *"or his surety."* Necessarily, the Reliance Homestead Association is protected by the clear lien certificate upon which the last payment was made against any further liability to the surety, the Union Indemnity Company; or to the contractor, as far as this last payment is concerned.

Had recorded liens existed against the building at the time of the last payment, it is clear that the Homestead Association would have been liable for such liens, notwithstanding such payment to the contractor.

But there is no provision in the building contract that makes the Homestead Association responsible in any way for outstanding unrecorded claims for material or labor, such as are claimed in the present suit by the surety company, which is itself liable in solido with the contractor for such claims.

Under this state of facts, the surety company cannot be permitted in this case to claim that the Homestead Association became its indemnitor as to such claims, under the pretext that it anticipated payments to the contractor.

In the first place, the Homestead Association was discharged, under the plain terms of the contract, from further liability to the surety company upon making the last payment upon a clear lien certificate.

In the second place, there is no definite time fixed in the contract for any of these payments to be made, to be anticipated by the Homestead Association.

As a matter of fact, the last payment made by the Homestead Association was more than sufficient to satisfy all outstanding claims against the contractor.

The mere fact that these payments were made in 16 installments, as the work was done and the amount certified to be due by the expert, instead of in 5 installments, in lump sums, as specified in the contract, is immaterial in our opinion, under the circumstances of the case, and under the clauses of the building contract, protecting the defendant, the Reliance Homestead Association.

On January 31, 1934, Clay W. Beckner and S. Sanford Levy, as receivers of the Union Indemnity Company and as statutory successors to the assets of that company, were placed by our order on the record of this court as parties plaintiff and appellant, and allowed to prosecute the appeal in this case to conclusion.

It is therefore ordered that the judgment appealed from be amended by substituting as plaintiffs therein Clay W. Beckner and S. Sanford Levy, receivers of the Union Indemnity Company, and it is now ordered that the judgment, as amended, be affirmed.

ST. PAUL, J., absent.